UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

The UNITED STATES of America        )
for the Use and Benefit of          )      NO.  CV-05-0068-LRS
Graybar Electric Company,           )
Inc., a New York Corporation,       )      ORDER GRANTING IN PART,
and GRAYBAR ELECTRIC COMPANY,       )      DENYING IN PART DEFENDANT
INC., Individually,                 )      OVERSTREET'S MOTION FOR
                                    )      PARTIAL SUMMARY JUDGMENT
                Plaintiffs,         )
                                    )
        -vs-                        )
                                    )
OVERSTREET ELECTRIC CO., INC.,      )
a Florida Corporation and           )
ATLANTIC MUTUAL INSURANCE           )
COMPANY, a New York                 )
Corporation,                        )
                                    )
                Defendants.         )
                                    )

    Before the Court is Defendant Overstreet Electric Company's

[Overstreet] Motion for Partial Summary Judgment (Ct. Rec. 99),

filed March 13, 2006; and Defendant Overstreet's Motion to Strike

(Ct. Rec. 126), filed April 14, 2006.  A hearing was held on May

9, 2006 in Yakima, Washington.  Ryan Harkins and James Yand

participated on behalf of Defendant Overstreet.  Jeremy Larson

participated on behalf of Plaintiff Graybar Electric Company

[Graybar].  The Court has considered the oral and written

arguments of counsel, and now enters this order to memorialize and

supplement the oral rulings of the Court, which are incorporated

herewith by reference.

ORDER - 1

**I. Background and Summary of Facts**

At the time of this dispute, Overstreet and Graybar had been doing business together for at least eight years, as evidenced by a credit agreement the parties entered into on October 31, 1994. On July 7, 2002, Overstreet and the U.S. Army Corps of Engineers ("Corps") entered into an agreement for installation of a station service transformer for the Chief Joseph Dam Project for the United States Government Contract No. DACW67-020C-0012 ("Corps Contract"). The Corps Contract was a Miller Act contract.

On July 16, 2002, Overstreet issued Purchase Order 402-241860 to Graybar for the provision of specially manufactured materials and equipment for installation of a station service transformer for the Corps Contract pursuant to the terms referenced on the Purchase Order. The Purchase Order called for payment of the sum of $370,800. Butch Bernard, Overstreet's Purchasing Manager at the time, signed the P.O. on July 16, 2002. Stephen Tisdale, Graybar's Pensacola Branch Manager at the time, never signed the P.O. during the July 16, 2002 negotiations for the P.O. The undisputed evidence indicates that Mr. Tisdale had apparent (actual authority is in dispute) authority to negotiate a binding arrangement with Overstreet and had in fact "negotiated approximately seventy (70) major purchase- order contracts with Benjamin Overstreet." Tisdale Decl., ¶2.

The undisputed evidence indicates that it was not uncommon, over the long course of Graybar's and Overstreet's business dealings, for Overstreet to order goods from Graybar under Overstreet purchase orders that were not signed by Graybar. Mr. Jones stated in his declaration that Overstreet routinely did not

seek acceptance of the purchase orders by signatures of Mr. Tisdale or any other authorized agent of Graybar.  Jones Declaration, ¶16.

On July 25, 2002 Graybar created an internal document titled "Approval Form" which purportedly is an internal quality control device used to insure qualifying purchase orders meet certain Graybar standards.  Karrenbauer Decl.  The Approval Form was never sent to Overstreet to communicate Graybar's acceptance of the terms and conditions.  Karrenbauer Decl.

Overstreet states that it was their intention that the requirements of the Corps Contract would be incorporated into the P.O.  In support of this assertion, Overstreet references paragraphs 3, 4 and 6 of the P.O. as well as the express reference to Contract No. DAC67-02-C-0012,[1] the Corps Contract, on the first page of the P.O.

Paragraph 3 reads, in pertinent part:

> This purchase order agreement shall comply with the contract documents, plans, specifications and amendments where applicable.[2]  . . .

Paragraph 4 reads, in pertinent part:

> . . . All submittals shall be complete and in compliance with the contract submittal requirements.

///

---

[1]The Court notes that the Corps Contract referenced in the P.O. is Contract No. DAC67-02-C-0012 which omits the "W" from the contact number appearing on Corps' documentation (Contract No. DACW67-020C-0012).

[2]Use of the term "applicable" may suggest that only applicable provisions from the Corps Contract were technically incorporated into the P.O.  Overstreet concedes that for purposes of its motion, it is concerned with incorporation of the completion date only.

ORDER - 3

Paragraph 6 reads, in pertinent part:

> . . . Submittals shall be complete and shall
> include all submittal requirements required by
> the specifications consisting of catalog data,
> shop drawings, certificates of compliance, O&M
> Manuals, etc. where required.   . . .

Overstreet further argues that the Corps Contract initially contained a "legal completion date" of June 30, 2003, which date was later revised to July 13, 2003.  In support of Overstreet's argument that the completion date of the Corps Contract was incorporated into the P.O., Overstreet refers the Court to paragraphs 3, 13, and 15 of the P.O.

Paragraph 13 reads:

> Time is of the essence, please procure submittal
> data, production and of all materials/equipment
> in such a manner so as not to delay the progress
> of the completion of this project.

Paragraph 15 sets forth a delivery date, other than the completion date found in the Corps Contract, of February 27, 2003.

   Graybar asserts, on the other hand, that the P.O. lacked any specific "incorporation-by-reference" language whereby the entire Corps Contract was incorporated.  Graybar further argues that the P.O. itself does not mention the completion date, and therefore was not binding on Graybar.   Even if the date was somehow incorporated, Graybar concludes that it had no control over the start dates of its performance due to the operation of ¶6 of the P.O.  See Jones Decl.

Paragraph 6 reads, in pertinent part:

> Unless otherwise stipulated, this purchase order
> is on hold for release, pending submittal
> approval and written release from Overstreet
> Electric Co., Inc.  All materials/equipment is
> subject to the approval of the
> architect/engineer/owner.

ORDER - 4

Graybar did not deliver the materials until September 5, 2003 which Overstreet argues was in breach of the P.O. which required delivery in time to permit completion of the Corps Contract legal completion date of July 13, 2003.  Graybar contends that the P.O. contract did not contain a term for the completion date and any delays were caused by Overstreet and the Corps.

There is some dispute concerning the date that the Corps Contract with Overstreet was closed.  Graybar suggests that the Corps terminated its contract with Overstreet on November 12, 2003.  Jones Decl.  Overstreet suggests, through the Morgan Overstreet Declaration, that the Corps Contract was closed by February 6, 2004.  Atlantic suggests, through the Scalf Declaration, that the Corps Contract was closed on March 1, 2004. In any event, in December 2003 Graybar advised Overstreet of its project close out costs and then billed Overstreet in March 2004. Graybar claims Overstreet owes  $313,036.37 for the specially manufactured equipment (Trench air core dry reactor) and materials Graybar supplied to Overstreet.  The Corps is presently in possession of the Trench air core dry reactor.

On March 4, 2005, Graybar filed suit in this court against Overstreet's bonding company Atlantic Mutual Insurance Company ("Atlantic") for $313,036.37 for its performance under the P.O. Graybar asserted a breach of contract claim under Washington state and common law against Overstreet and also requested attorney's fees for its breach of contract claim pursuant to section 9 of the P.O.  Overstreet has asserted counterclaims against Graybar for breach of the P.O. because Graybar failed to timely deliver materials and equipment in compliance with the Corps Contract.

Graybar now argues, in opposition to Overstreet's motion for partial summary judgment, that the P.O. is not an enforceable contract except as to Graybar's interest as a seller.

**II.  Summary Judgment Standard**

A Court will grant summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  The party seeking summary judgment must show that no genuine issue of material fact exists and that the Court should grant judgment as a matter of law.  *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp*., 677 F.2d 1301, 1306 (9th Cir. 1982).  The Court must construe all facts and all justifiable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at 255.

The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial.  *Celotex*, 477 U.S. at 324; *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978).  The non-moving party may use affidavits, depositions, answers to interrogatories, and admissions to do this.  *Celotex*, 477 U.S. at 323-24.  The court must enter summary judgment against a party who fails to make a showing sufficient to establish an essential element of a claim, even if genuine factual disputes exist regarding other elements of the claim.  *Id*. At 322-23.  No issue for trial exists unless sufficient evidence favors the non-moving party for a jury to return a verdict for that party.  *Anderson*, 477 U.S. at 249.

Thus, a scintilla of evidence in support of the non-moving party's position will not suffice.  *Id*. at 252.

At the summary judgment stage the Court's function is not to weigh the evidence, judge credibility, or in any way determine whether there is a genuine issue for trial.  *Id*. at 249. Essentially the inquiry is "whether the evidence presents a sufficient disagreement to require submission to [a fact finder] or whether it is so one sided that one party must prevail as a matter of law."  *Id*. at 252.

## III. Discussion

Overstreet's motion for partial summary judgment covers the following three issues:

A) Whether the P.O. is an enforceable contract between Overstreet and Graybar;

B) Whether the P.O. incorporates by reference the requirements contained in the Corps Contract; and

C) Whether Graybar breached the P.O. by failing to deliver materials and equipment required by the P.O. until after the Corps Contract's legal completion date of July 13, 2003.

The essence of Graybar's opposition is that the P.O. is not an enforceable bilateral contract under Florida law[3] because Graybar never signed the P.O.  Graybar argues that the P.O. is instead, an enforceable unilateral contract and should be analyzed under

---

[3]Although the purchase order between Overstreet, a Florida company, and Graybar, a New York company, did not contain a choice of law provision, this Court does not have to decide the choice of law, as Florida, New York, and Washington have adopted the U.C.C., including U.C.C. § 2-201, and therefore, application of the law of Florida, New York or Washington would produce substantially the same outcome.

the Uniform Commercial Code ("UCC") and Statute of Frauds[4], which requires a writing for goods over $500.00, signed by both parties. Graybar asserts that because the P.O. was signed only by Overstreet, Overstreet cannot enforce the P.O. against Graybar. Graybar contends however, that it can enforce the P.O. against the signing party Overstreet up to the price of the goods stated therein or, $313,036.37.

Overstreet contends that the P.O. is an enforceable bilateral contract based on Graybar's performance, i.e. provision of the specially manufactured goods and past business dealings between the parties. Overstreet further argues that Graybar is judicially estopped from now taking a position inconsistent with its position in opposition to Atlantic's summary judgment motion, heard on September 29, 2005--that there was an enforceable contract between Overstreet and Graybar which specifically incorporated provisions of the Corps Contract. Overstreet references Ct. Recs. 52, 130, 18, 123, 118, 121 and the September 29, 2005 "Verbatim Report of Proceedings Summary Judgment" transcript to illustrate Graybar's arguments in opposition to Atlantic's summary judgment motion tending to show it believed an enforceable contract existed and that Graybar was bound to perform under.

The Court finds Overstreet's argument convincing regarding application of the judicial estoppel concept to Graybar's

---

[4]Although neither party makes much of the specially manufactured nature of the goods, the Court notes in passing that the Statute of Frauds "exempts contracts involving "specially manufactured" goods from the writing requirement because in these cases the very nature of the goods serves as a reliable indication that a contract was indeed formed." *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1036-37 (5th Cir.1992).

ORDER - 8

positions throughout this case.  Judicial estoppel is invoked to:

> Prevent a party from gaining an advantage by taking inconsistent positions but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts.

*Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  The Ninth Circuit has held that judicial estoppel applies where a party asserts inconsistent positions and the court relied upon or accepted the party's previous position.  *Id.* at 782-3.  This is the case here as the Court relied, in part, on Graybar's assertions in denying Atlantic's summary judgment motion and allowed Graybar to file supplemental pleadings to show it had provided materials to the Chief Joseph Dam Project on March 18, 2005 pursuant to its "contract with Overstreet."

For instance, Graybar had argued in an effort to defeat Atlantic's summary judgment on September 29, 2005 that Specification Section 01701 of the Government Contract was incorporated into the P.O.  This provision required Graybar to provide O&M manuals that Overstreet would in turn submit to the Corps.  Graybar cannot have it both ways.  In another example, Graybar states in its reply to Overstreet's counterclaim:

> Plaintiff admits so much of Paragraph 3.2 that states that Overstreet and Plaintiff entered into a contract in 2002 identified as Purchase Order 402-241860 whereby Plaintiff agreed to supply and did supply materials and equipment to Overstreet on credit in exchange for Overstreet's promise to pay Plaintiff the sum of $370,800.00.

Ct. Rec. 18, paragraph 2.

In an effort to determine whether the P.O. was an enforceable bilateral contract and to examine the customary definition of a

ORDER - 9

contract in the setting at hand, the Court looks, in part, to Federal Acquisition Regulation ("FAR") 2.101, since the language used in Miller Act performance bonds is set through federal acquisition regulations. Under the particular facts of this case, the P.O. falls within the customary meaning of "contract" found in FAR 2.101, which contains an extremely broad definition of contract. The complete definition of contract under these regulations reads:

> A mutually binding legal relationship obligating the seller to furnish the supplies or services (including construction) and the buyer to pay for them. It includes all types of commitments that obligate the Government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing. In addition to bilateral instruments, contracts include (but are not limited to) awards and notices of awards; job orders or task letters issued under basic ordering agreements; letter contracts; orders, such as **purchase orders, under which the contract becomes effective by written acceptance or performance**; and bilateral contract modifications.

48 C.F.R. § 2.101 (1990)(emphasis added). The purchase order in this case became a mutually binding legal relationship obligating the seller, Graybar, to furnish the supplies, and the buyer, Overstreet, to pay for them. The P.O., a purchase order, became an effective contract by Graybar's performance--provision of specially manufactured materials and equipment for installation of a station service transformer for the Corps Contract.

Based on Overstreet's past dealings with Graybar, it was customary for Graybar not to sign a purchase order but instead just perform without a signature. The Court finds that the P.O. is an enforceable contract between Overstreet and Graybar. The

Court further finds that applicable requirements of the Corps Contract were expressly incorporated into the P.O., including the completion date.  The Court, however, finds that there is a genuine issue of material fact regarding whether Graybar breached the P.O. by delivering the specially manufactured goods on September 5, 2003.

Counsel for Graybar in his post hearing submittal asks the Court to certify its ruling for immediate appeal.  The Court concludes that an appeal at this time is likely to result in piecemeal litigation with attendant delay, additional expense and the elongation of the legal process.  The Court respectfully declines counsel's request.  Accordingly,

**IT IS ORDERED** that:

1.  Defendant Overstreet's Motion for Partial Summary Judgment, **Ct. Rec. 99**, filed March 13, 2006 is **GRANTED in part** and **DENIED in part**.

A.   Summary judgment as to the existence of an enforceable contract is **GRANTED**.  The Court finds that on July 16, 2002, Defendant Overstreet and Plaintiff Graybar entered into a contract titled Purchase Order No. 402-241860 for the provision of certain materials and equipment for installation of a station service transformer pursuant to United States Contract No. DACW67-020C-0012 between Overstreet and the Corps.

B.   Summary judgment as to whether Purchase Order No. 402-241860 incorporates by reference the requirements contained in United States Contract No. DACW67-020C-0012 is **GRANTED in part and DENIED in part**.  The Court finds for purposes of this motion, that Purchase Order No. 402-241860 incorporates by reference the

1  completion date set forth in United States Contract No. DACW67-

2  020C-0012.

3        C.  Summary judgment as to whether Graybar breached the

4  Purchase Order No. 402-241860 by delivering the specially

5  manufactured goods on September 5, 2003 is **DENIED.**

6     2.  Defendant Overstreet's Motion to Strike, **Ct. Rec. 126**,

7  filed April 14, 2006 is **DENIED**.

8     The District Court Executive is directed to file this Order and

9  provide copies to counsel.

10     **DATED** this 22nd day of May, 2006

11

12                          *s/Lonny R. Suko*
                    _____
13                          LONNY R. SUKO
                    UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 12